# CHARLESTON.

BRYANT *et al. v.* GROVES *et al.*

Submitted January 27, 1896—Decided April 1, 1896.

1. EQUITY PLEADING—BILL IN EQUITY—ANSWER.

Allegations in a bill in chancery positively denied by the averments of the answer, and unsustained by proof, must, at the hearing, be regarded as waived by the plaintiff.

2. EQUITY—PRESUMPTION OF WAIVER—LACHES.

When lapse of time is sufficient to raise the presumption of assent, acquiescence, or waiver on the part of plaintiff, or those under whom he claims, he can not recover unless he rebuts such presumption by a reasonable and satisfactory excuse for the delay in the assertion of his rights not founded on his own laches or neglect.

3. EQUITY PLEADING—BILL IN EQUITY—ANSWER.

It is incumbent on the plaintiff to show by his allegations and proofs, his right to a decree before he can require the defendant to sustain the affirmative allegations of his answer.

A. W. CORLEY for appellants, cited Code c. 31, ss. 25, 29; 23 W. Va. 100; 34 W. Va. 217; Const. Art. XIII, s. 6; Code c. 125, s. 30.

ALDERSON & HORAN and BROWN, JACKSON & KNIGHT for appellees, cited 23 S. E. Rep. 32; 14 W. Va. 561; 27 W. Va. 362; 18 W. Va. 333; 30 W. Va. 176; Acts 1872-3, c. 117; Kelley, Rev. Stat. c. 188; 24 W. Va. 173, 594; 23 W. Va. 675; 16 W. Va. 1; 17 W. Va. 901; 12 Gratt. 576; 17 Gratt. 627; 1 W. Va. 145; 7 W. Va. 447, 707; 11 W. Va. 703; 19 W. Va. 323; 22 W. Va. 253; 27 W. Va. 32, 510; 25 W. Va. 830; 16 W. Va. 208; Code c. 134 ss. 5, 6.

DENT, JUDGE:

In the Circuit Court of Nicholas county, July 29, 1891, Jane Bryant and John K. Bryant, her husband, filed their bill in chancery against Washington Groves and the other

heirs of William Groves, deceased, of which Jane Bryant was one, having in view the following objects: (1) To compel a conveyance of two certain tracts of land, containing one hundred and seventy three and one-half acres and four hundred acres, respectively, to the plaintiff Jane Bryant and Elizabeth Dorsey, her sister, a defendant; (2) to cancel a tax deed held by Washington Groves, as a cloud on the title of such land; (3) to stay waste, until the suit could be heard and determined. The defendant's counsel demurred to this bill at some length, on the grounds of multifariousness; but, other than unnecessary verbosity, there is nothing in the demurrer. The objects of the bill are perfectly consistent, and properly joined together, and dependent on each other. On the overruling of the demurrer, the defendant Washington Groves filed his answer, to which the plaintiffs entered a general replication. The defendants then moved a continuance to prepare their defense and take their proofs, but the plaintiffs objected. The court sustained the objections, heard the case on bill, answer, and general replication, and entered the decree in favor of the plaintiffs, of which the defendants now complain.

The question first presented is whether the pleadings and exhibits filed therewith justified the decree. If not, then the defendants are without reason to complain of the court for refusing them a continuance. The bill contains the following allegations, to wit: "That the said William Groves, during the whole of the years 1872 and 1173, owned, held, and had, in said county and in Kentucky district, the district in which said lands are situated, and in his possession, more than sufficient and plenty of personal estate, such as a wagon, blacksmith tools, cattle, windmill, and beds, *etc.*, and money, visible and to be seen, out of which it was the duty of said sheriff to collect the said taxes for 1872 upon said tracts of land; and it was the duty of said sheriff to have collected and realized said taxes out of said personal estate, and said William Groves was ready and willing in fact, to pay said taxes, and desired to pay same, and did not know at the time that said lands were illegally returned delinquent as aforesaid, all which facts were well known

at the time to the said Washington Groves, and were well known to the said Rufus Groves at and before the date of the deed to him for the four hundred acres aforesaid, which deed was in the nature of a gift to him, and he paid no consideration for the said lands. That within one year after said October 14, 1873, said William Groves, having ascertained that said illegal tax sales had been made, went to his said son, Washington Groves, and, with the view of avoiding trouble and litigation, offered to redeem said lands from him, by paying to him the necessary amount of money for the purpose; whereupon the said Washington Groves, then intending and contriving to cheat and defraud his said father and plaintiffs, told him, in substance, that he was then too busy to attend to it, that the matter would be all right, and could be attended to at another time, and agreed that said lands might be redeemed at any time, and in that way put his father off, and being then indebted to his said father, and his father having confidence in him, as he well knew; all of which facts were well known to the said Rufus Groves at the date of the deed aforesaid. That the said William Groves, in his lifetime, relied upon the said promises of the said Washington Groves made to him 'that it would be all right, and could be attended to at another time;'—the said Washington Groves, having agreed with said William Groves that said land could be redeemed at any time from the said purchase made by him—and having in him the confidence a parent would repose in his son, rested content, and did not know up to the date of his death that said Washington Groves had taken said fraudulent and void deed for said land; and the plaintiffs knowing of said agreement and promise of said Washington Groves, likewise rested content, and neither of them had knowledge that said fraudulent and void deed had been executed until the —— day of ——, 188–, and until within five years from the institution of this suit."

Plaintiffs further aver that the said William Groves, in his lifetime made advancements to all of his said children, with the exception of the said Jane Bryant and Elizabeth Dorsey, equal in value to the full share of each in all of his estate; and it was intended, understood, and agreed by,

between, and among himself and all his said children that the said Jane Bryant and said Elizabeth Dorsey should receive, take, and hold the said four hundred acres and the said one hundred and seventy three and one-half acres of land as their shares of his estate, and it is now so conceded and admitted by all of said children, and the children of the said Samuel Groves, deceased, except the said Washington Groves, who expects, intends, and attempts, by means of said fraudulent and void tax deed, to cheat and defraud his said sisters out of the said real estate, to which they are fairly and honestly entitled; and the said adult children of William Groves, now living, with the exception of John Groves, are restrained by threats and fears of said Washington Groves from conveying to their said sisters any legal interests they might have in said real estate.

The answer of Washington Groves plainly and positively denies these allegations, and there is no proof to sustain them.

In the second point in the syllabus in the case of *Pusey* v. *Gardner*, 21 W. Va. 469, it was held: "The burden of charging as well as proving fraud, mistake, or misrepresentation is on the party alleging it; and a plaintiff is no more entitled to recover without sufficient averments in his bill than he is without proof of his averments when properly made. The one is as essential as the other, and both must concur, or relief can not be granted." Hence these allegations must be considered as entirely waived by the plaintiffs when they insisted on a hearing without proof thereof, and as though they were entirely stricken from the case as completely as if never made. The case would then rest on the following admitted and established facts: That the land in controversy, having been returned delinquent for the non-payment of taxes for the year 1872, in the name of William Groves, the then owner, was sold on the 14th day of October, 1873, and purchased by Washington Groves; and not having been redeemed by William Groves in the manner provided by law, the purchaser obtained a deed therefor from the county court clerk on the 12th day of April, 1875, and immediately had the same recorded, and had the land transferred on the land books to himself,

and he and his vendee have paid the taxes thereon till the institution of this suit, in the year 1891, being nineteen years after the return of the land delinquent. That William Groves continued to reside in the same county up until the year 1878, when he died, with constructive notice of the recordation of said tax deed and the transfer of the land, and with actual notice of its delinquency, as charged in the bill admitted by the defendants. That he owned other property, and paid taxes thereon, and made no effort to redeem the land in controversy or set aside the tax deed as void, or, so far as the proof shows, in any manner or at any time raised any objection to it. Thirteen years after his death, and about sixteen years after its recordation, one of his heirs, with full constructive notice of its recordation, and without showing any excuse for not doing so sooner, institutes this suit to set aside such deed for omissions, irregularities, and mistakes of the officers of the law in returning delinquent and selling such land for the non-payment of taxes due thereon. Possession of the land is admitted to be in the defendants, but how long such possession has continued is not alleged in the bill, although it is in the answer. But the defendants were denied the opportunity to prove their allegations, so the presumption must be, at least constructively, that it was with the defendants from the time of the recordation of the tax deed and the transfer of the land on the land books. There is no allegation sustained by proof in the bill that the plaintiffs did not have full and complete notice of such possession, or that William Groves, during his lifetime, did not have such notice.

It is alleged, and not denied, as an excuse, that the female plaintiff was under the coverture of the male plaintiff, who unites in this suit, and therefore she was disabled from bringing the same. But such excuse is not tenable, for this is a suit by husband and wife jointly for the recovery of the wife's separate property, which might have been brought thirteen years before, or at any succeeding period. In the case of *Simpson* v. *Edmiston,* 23 W. Va. 675 (eighth point of syllabus) it is held that "a purchaser of land sold for delinquent taxes, after he acquires a deed therefor, will

be deemed as holding adversely to the person in whose name the land was sold; and if such person denies the validity of the tax deed, and still claims the land, he must keep the land on the assessor's book in his name, and pay the taxes thereon. The payment of the taxes on such land by the tax purchaser in his own name will not inure to the benefit of the former owner." William Groves did not redeem the land after it was returned delinquent, nor did he keep it on the land books in his own name, and pay the taxes thereon, but he apparently abandoned the same. Neither did his heirs, after his death, have the land restored to the land books in his or their name, nor pay the taxes thereon. But Washington Groves having begun to hold adversely to William Groves during his lifetime, his adverse holding, in absence of all proof to the contrary, presumptively continued as against the heirs, especially as he kept the land on the land books in his own name, and paid the taxes thereon, without calling on any of the heirs to assist him. And the payment of taxes by him can not inure to the benefit of the other heirs as to whom he was holding adversely, in the absence of fraud, misrepresentation, or mistake, brought about by his conduct, and clearly established by full and competent proof. So that, by the failure of William Groves during his lifetime, and his heirs since his death, such land, as to him and them, having remained off the land books exceeding five successive years, such title as remained in him, by reason of the tax deed being invalid for any reason, became forfeited to the state, by virtue of section 39, chapter 117, Acts 1872-73, and section 39, chapter 130, Acts 1882; and, over twenty years having elapsed since its first forfeiture, even a person laboring under disability could not redeem it when such disability is removed; and by virtue of section 40, chapter 130, such forfeited title is transferred to, and vested in, the defendants, even though said tax deed be invalid, and only furnish a color of title. As there is some question as to whether these provisions of the law, relating to a less quantity than one thousand or more acres of land, are constitutional, and it not being necessary to settle such question in this case, what is said on the question is merely given as private opin-

ion.  It is settled law that a tax deed, though void, constitutes good color of title.  *Mullan's Adm'r* v. *Carper*, 37 W. Va. 215 (16 S. E. 527.)  It is further held that "delay in the assertion of a right, unless satisfactorily explained, even when it does not constitute a positive statutory bar, operates in equity as evidence of assent, acquiescence, or waiver."

As heretofore shown, while the plaintiffs attempt in their bill to explain the cause of the delay in the assertion of their rights, such allegations are denied, and are without evidence to sustain them.  Hence there is no satisfactory explanation of their delay.  *Bill* v. *Schilling*, 39 W. Va. 108 (19 S. E. 514); *Whittaker* v. *Improvement Co.*, 34 W. Va. 229 (12 S. E. 507); *Curlett* v. *Newman*, 30 W. Va. 182 (3 S. E. 578); *Pusey* v. *Gardner*, 21 W. Va. 470; *Trader* v. *Jarvis*, 23 W. Va. 100; *Hale* v. *Cole*, 31 W. Va. 585 (8 S. E. 516); *Walker* v. *Ruffner*, 32 W. Va. 297 (9 S. E. 215).

At the time the land was sold for taxes, it was of but little value, as is evidenced by the tax assessments.  It was wild, unimproved, situated in a remote part of Nicholas county, far away from a railroad or other public improvements, and was not worth the annual tax, though small, except as a mere matter of future speculation.  For these reasons, William Groves may have concluded it not worth redemption, and permitted the tax deed to stand, as it relieved him from the payment of the taxes.  His silence under the circumstances is strongly presumptive of the waiver of his rights, and his assent to the acquirement of title on the part of his son.  The plaintiffs allow thirteen years after the death of William Groves to slip away, although, as they claim, the female plaintiff, by arrangement with father and children, was to have one-half of the lands for her inheritance; yet they made no effort during the whole time to take possession of the land, or pay the taxes thereon, but sit idly by and allow Washington Groves to hold the land in his own name, and pay the taxes, without an offer to reimburse him.  In the meantime the country is developed, railroads and highways are built, rivers are slacked and cleared of obstructions, sawmills are brought into the county, the way to the market is opened, the land becomes

valuable because of its timber; and those who have quietly slept on their rights, aroused from their apathy by the stimulus of prospective gains, reach forth to seize the law as a sickle to reap the harvest that has been preserved by another and more vigilant hand. But the law sleeps now. Rights that would have been gladly enforced had their assertion been with reasonable diligence, by lapse of time lose all moral effect to arouse the conscience of a court of equity. This is but the presumption of assent, waiver, or acquiescence by reason of *laches* or neglect; and if those who assert the right can furnish a reasonable excuse, founded on the duplicity, misrepresentation, or fraud of those resisting the right, equity, if the law permits, will provide a remedy. In this case, the plaintiffs, owing to their failure to sustain by proof the alleged causes for their delay, are left entirely without any excuse. It must be taken for granted that their failure to sustain the necessary allegations of their bill was occasioned by their inability to do so.

In their brief, counsel for plaintiffs say: "The decree was rendered in the court below upon the bill and answer and exhibits therewith filed, and must stand or fall upon the same showing here;" also that "this is not a case of fraud, nor one depending on parol evidence,"—thus abandoning all the charges of fraud, misconduct, or deception on the part of the defendant Washington Groves, and leaving their clients without any excuse whatever for their long delay in not attacking his tax deed, which they allege to be illegal and void.

While it is true that the burden of proving an affirmative allegation in an answer as matter of defense is on the defendant, such as the statute of limitations, yet the defendant can not be called upon to prove anything until the plaintiff has, by his allegations and proofs, established such a case as would entitle him to relief, in absence of rebutting proof on the part of the defendant. This the plaintiffs have failed to do, and therefore they have not shown themselves entitled to the relief sought; and, for this reason the decree will be reversed, and the bill be dismissed.