# CHARLESTON.

PARKER *et al. v.* BRAST *et al.*

Submitted April 9, 1898—Decided November 30, 1898.

1. CO-TENANCY—*Sale for Taxes—Tax Title—Trusts.*

Where a co-tenant permits the common property to be sold for taxes, and directly or indirectly secures the title in his own name, his deed will be avoided at the instance of his co-tenants, or he will be held to be a trustee holding the legal title for their mutual benefit.   (p. 402).

2. CO-TENANCY—*Purchase of Common Property—Notice.* ·

A purchaser of the common property from such co-tenant, with notice of the character of his title, will be limited in his holding to the actual interest of his grantor in such property.  (p 402).

3. CO-TENANCY—*Grantor—Deed - Ouster — Adverse Possession—Statute of Limitations.*

A grantor claiming the common title of the co-tenancy under a deed from one of the co-tenants is under the burden of showing some notorious act of ouster or adversary possession, which has ripened into perfect title by its unbroken continuation during the statutory period of ten years, with the full knowledge and acquiescence of the disseised co tenants.   (p. 403).

4. CO-TENANCY—*Possession—Laches—Disseisin—Lapse of Time—Ouster.*

As the possession of one co-tenant is the possession of all, laches, acquiescence, or lapse of time cannot bar the right of entry of a co-tenant until the actual disseisin has been effected by some notorious act of ouster brought home to his knowledge (p. 404).

5 CO-TENANCY—*Deed—Ouster—Adverse Possession.*

The making of a deed for the whole property by a co-tenant to a stranger is not such act of ouster, unless actual adverse possession is taken thereunder.   (p. 403).

Appeal from Circuit Court, Wetzel County.

Bill by William W. Parker and others against M. A. Brast and others to recover possession of land claimed in co-tenancy. From a decree in favor of complainants, defendants M. A. and Amos E. Brast appeal.

*Affirmed.*

THOMAS P. JACOBS and GEORGE H. UMSTEAD, for appellants.

ROBERT MCELDOWNEY, S. B. HALL, and J. C. PARKER, for appellees.

DENT, JUDGE:

William W. Parker and others against M. A. Brast and others, from the circuit court of Wetzel County. In the year 1858, William W. Parker, John W. Horner, and R. W. Lanck were the joint owners in fee simple of several large tracts of land lying in Wetzel County, held by them under patent from the State of Virginia. R. W. Lanck was a resident of the county, and was intrusted by the other co-tenants with the supervision of these lands. He permitted the same to be returned delinquent for the year 1859, and in the year 1860 they were sold, and purchased by J. D. Ewing, who, on the same day he received his deed, conveyed them to R. W. Lanck, in consideration of one hundred dollars. Some time afterwards, Lanck disposed of a large portion of these lands to other parties. In the year 1869, William W. Parker and John W. Horner filed their bill against R. W. Lanck and his purchasers, claiming to be co-tenants in said lands, but asking that the sales made by said Lanck be ratified and confirmed, and that he be required to account for the proceeds, and pay to the complainants each one-third thereof. This suit was never finally heard and determined. In the year 1884 said Lanck conveyed the balance of said lands, the title of which still remained in him, to his son Edgar W. Lanck, in consideration of one dollar and natural love and affection. Without taking possession of the lands or knowing anything regarding the quantity or boundaries thereof, on the 11th day of April, 1893, Edgar W. Lanck conveyed the same to Amos E. Brast and Michael A. Brast, in consideration of

two hundred and fifty dollars,—one hundred and fifty
dollars cash, and the residue for surveying done and taxes
paid. In October, 1896, the plaintiffs filed their bill to
have themselves declared co-tenants in this tract of land,
supposed to contain not less than one thousand acres. In
the meantime, the said Brasts had executed leases on said
land to the South Penn Oil Company and the Eureka Pipe-
Line Company, which plaintiffs desire, so far as they are
concerned, to be ratified and confirmed. The Brasts
answered, claiming to be *bona fide* purchasers for value
without notice, that plaintiffs had lost their right by laches,
by acquiescence and waiver in the former suit instituted,
and by the statute of limitations, and adverse possession
by respondents and those under whom they claim for
more than ten years. Edgar W. Lanck answered, claim-
ing adversely to plaintiffs' pretentions, and claiming that
his deed was for valuable consideration, namely, the sup-
port of his father and mother. He alleges that the land
was in a state of nature, and therefore in the actual pos-
session of no one until after his deed to the Brasts, which
he claims was obtained from him through fraud on their
part. Some depositions were taken, and some redemption
tax receipts, against the objection of defendants, were ad-
mitted in evidence. The circuit court held that the co-
tenancy between Parker and Horner's heirs and Lanck
and those claiming under him still existed, and that the
plaintiffs were entitled to the two-thirds of said land.
From this decree the Brasts alone appeal.

The appellants seemingly rely on the case of *Bryant* v.
*Groves*, 42 W. Va., 16, (24 S. E. 605), as decisive of this
case. This would undoubtedly be true if it were not for
the settled principles of co-tenancy here existent, which
were not present in the former decision. On the contrary,
this case is governed by the principles announced in the
case of *Cecil and Hall* v. *Clark*, 44 W. Va., 659, (30 S. E.
216). The tax purchase and after-acquirement of title
to this land by Lanck, by reason of the sale to Ewing, in
1860, under the decisions of this Court, was nothing more
than a mere redemption, and the legal title stood in his
name in trust for his co-tenants. *Batton* v. *Woods*, 27
W. Va., 58; *Curtis* v. *Borland*, 35 W. Va., 124, (12 S. E.

1113). See point 4 in case of *Cecil and Hall* v. *Clark*, where it is held: "A tax purchase by one tenant in common of the land owned in common is but a redemption, and inures to the benefit of the co-tenancy. So, with a purchase under a sale of land under the common title forfeited for taxes, and sold by commissioner of school lands." The co-tenant in charge could not oust his co-tenants by permitting the land to be returned delinquent and sold, and then buying the same at a nominal price from the tax purchaser, as such conduct on his part simply establishes a collusive attempt to acquire the title of his co-tenants without their knowledge. There is nothing to show that the absent co-tenants were aware of the deed to their co-tenant until they brought their suit, in 1869, to have the proceeds of the sales made partitioned between them; and in such suit they treated him as holding the legal title in trust for them just as the law would treat him. Had he taken actual adverse possession of the land, and thus completely ousted his co-tenants, and so held the same for the period of ten years with their knowledge, the ouster would have been complete, and the co-tenancy would have ceased. But actual possession of the land in controversy was not taken until after the deed from Edgar W. Lanck to the Brasts, in 1892, less than four years from the bringing of this suit. These parties all had constructive notice of the condition of the title from the records, and they cannot claim to be innocent purchasers for value without notice. *Pillow* v. *Improvement Co.*, (Va.) 23 S. E. 32, approved in *Cecil and Hall* v. *Clark*, above cited. Edgar W. Lanck, by his deed, under this last decision, took only the title of his father, and therefore he became a co-tenant with the plaintiffs, as no perfect disseisin has been shown as to them; and his grantees took in the same manner, as the disseisin could not become perfect until the statutory period of ten years of actual, notorious, and adverse possession intervened, with notice brought up to the ousted co-tenants. *Davis* v. *Settle*, 43 W. Va., 17, (726 S. E. 55).

These defendants insist that this suit is barred for the reason that William W. Parker and John W. Horner filed their bill heretofore referred to, in 1869, without attacking the tax deed or the purchase of Lanck from Ewing,

but apparently ratified the same, and asked that Lanck, in the sales made by him be treated and held to account as their trustee, and claim that this position is entirely inconsistent with that of the present plaintiffs. While it is true that the plaintiffs did not at that time ask to have said deeds canceled as a cloud on their title, they did ask that Lanck be regarded as a trustee, holding the legal title for their benefit, which is the same thing in substance, except as to innocent purchasers for value without notice. If by permitting the deeds to remain uncanceled, and the title to remain in Lanck unchallenged, some innocent person had been led to purchase the property and pay full value therefor, without notice of their claim of co-tenancy, they might have been barred as to the lands, but not as to Lanck. Such is not this case. The purchasers here affected were neither for value nor without notice, as the paper evidence and the admission of the parties in their pleadings fully establish. The appellants purchased this property for less than two hundred and fifty dollars, which was certainly but a nominal price compared with its real value; and they say they had the title examined, and were fully aware of the same at the time of the purchase. They therefore knew that Lanck's title depended upon a tax sale made during the time of great confusion on account of the war, and that he had been a co-tenant with the plaintiffs and those under whom they claim; and it must be presumed they were fully advised as to the law of co-tenancy, and knew that the purchase of Lanck inured to the benefit of his co-tenants until actual disseisin by him had become perfect by time, under the statute of limitations. This put them on their guard and inquiry as to the true state of the co-tenancy.

The present suit is in perfect harmony with the former one, except the subject-matter is different, as both seek to treat Lanck and his grantees as trustees, holding the legal title for the benefit of the co-tenancy. In the former suit they were willing that the sales be confirmed, and the proceeds be partitioned, because they were made for value. In the later suit they ask that the sales to Edgar W. Lanck and the Brasts be limited to the original Lanck one-third interest, because the sales were not for value

without notice. So, the doctrine of estoppel does not apply to this case either by way of laches or inconsistent positions on the part of plaintiffs. If the first suit had been heard on its merits, and determined adversely to the plaintiffs' claim, it would have been a bar to the present proceedings. The questions of title are the same in both suits. But, as clearly appears from the record, such suit was never finally heard, determined, or dismissed, and hence it cannot bar the present suit. *Watson* v. *Watson*, (decided at this term) 31 S. E. 939. The relation of trust and confidence is such between co-tenants that it would be inequitable to permit one of them to do anything to the prejudice of the others in reference to the common property. For one co-tenant in any way but the most open and avowed, with the full knowledge of those in common interest with him, to try and obtain the common title, has been held to be a breach of trust, amounting to a fraud against the rights of the co-tenancy. The only way to destroy a co-tenancy is either for part to buy out the others, or to exclude them from participation therein by such open and notorious acts of ouster as amount to a disseisin, and which has ripened by actual adverse possession into perfect title under the statute of limitations. The present is not such a case. This conclusion renders it unnecessary to consider appellants' objections to the depositions and tax receipts, as they in no wise affect the determination reached. The decree is affirmed.

*Affirmed.*